IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIC C. GARVIN,**

    **Plaintiff,**

                                  Civil Action 2:20-cv-2566
                                  Judge Edmund A. Sargus, Jr.
    **v.**                            Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Eric C. Garvin ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 24), Plaintiff's Reply (ECF No. 25) and the administrative record (ECF No. 14). No Reply was filed. For the following reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g) for further consideration.

## I. BACKGROUND

Plaintiff applied for disability benefits on September 23, 2016, alleging disability beginning January 1, 2015. (R. 173.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 89, 105.) Upon request, a hearing was held on November 16, 2018, at

1

which Plaintiff, proceeding with the assistance of counsel, appeared and testified. (R. at 36-74.) A vocational expert ("VE"), John R. Finch, also appeared and testified at the hearing. (*Id.*) On February 11, 2019, Administrative Law Judge Heidi Southern ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 13-27.) On March 20, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT HEARING TESTIMONY

Plaintiff testified that he was born on May 19, 1989, (R. at 41), making him 29 years old on the date of the hearing. He stated that he is married and has four daughters with his current wife and an older daughter who lives with her mother. (R. at 41-42.) He stated that he has a driver's license and drives every day to his AA meetings, later clarifying that he went to AA meetings every third day. (R. at 42-43.) He has a high school education and has completed some online college. (R. at 43.) He is midway through his bachelor's degree in Human Services after taking online classes for four years. (R. at 44.)

With respect to his work history, Plaintiff stated that he completed boot camp in the military but, after he sustained an injury, he opted to leave. (*Id.*) Plaintiff testified that, after he left the military, he held several jobs for short periods of time. (R. at 45-48.) In response to questioning from his counsel, Plaintiff confirmed that he had had somewhere between 25 and 30 different employers, that he had been fired from eight, and that he left the other jobs before he was fired. (R. at 60-61.) He explained that he was always "fighting with somebody at jobs" because he thought they were mad at him, picking on him too much or yelling at him. (R. at 61.) In response to the ALJ's questioning, Plaintiff verified that in 2018 he worked for his brother-in-law's cleaning service once a month and earned $25 to help him pay child support. (R. at 49.)

2

He further confirmed that, in 2018, he had been hired by Licking/Knox Goodwill Industries and had worked there for two or three months, cleaning classrooms and restrooms on second shift. (*Id*.) That job was full-time but he left when he "had a mental breakdown one night, and was severely suicidal, and went to the emergency room." (R. at 49-50.) Plaintiff could not recall when he left Goodwill or when the last time was that he had gone to the hospital because of mental health symptoms, although he believed it had been in 2018. (R. at 50.)

When asked by the ALJ to explain in his own words why he has been unable to work since January 2015, Plaintiff testified that he "can get a job easily, [he] can talk [his] way into a job, … but then problems always happen, one, two, three weeks – however many -- … and [he will] get in arguments and fights with everybody." (R. at 52.) He further stated that he will "feel like everybody's mad at [him]. And [he will] take everything personal, and it'll make [him] either quit or blow up to where [he] can't come back the next day and just be cool with the people that [he] think's mad at [him.]" (*Id*.)

In response to the ALJ's questions regarding his current mental health treatment, Plaintiff recounted that he went to Behavioral Healthcare Partners to see "whoever the on-call nurse is" and get his "meds." (R. at 52.) He explained that doctors have left that practice and he has switched doctors three or four times in 2018 alone so has not been able "to really see them or see therapy." (*Id.*) Plaintiff further testified that he sees a counselor when he is "so depressed that [he] think[s] there's no hope for anything" and that this was once or twice a year. (R. at 52-53.) When asked by the ALJ why he did not see a counselor more often, Plaintiff replied that his "wife is [his] rock." (R. at 53.) Plaintiff also confirmed that his current medications include Depakote for a mood disorder, Latuda for depression, and Seroquel as a sleep aid. (*Id*.) Plaintiff stated that these medications "help enough" to allow him to function at home, but that when he

goes out to work, he continues to perceive that people are out to get him, are mad at him, or are talking about him. (*Id.*) He also asserted that he does not tell his doctors everything that goes through his mind "because it's scary" and because he does not want to undergo changes in his medication. (R. at 54-55.)

When asked by the ALJ to describe how he spent his days, Plaintiff said that the tries to help with his kids and "be a dad." (R. at 55.) He explained that his mom and sister help him with the kids when he needs it and his wife comes home at lunch to help him. (*Id.*) He further stated that he is able to attend AA meetings when his wife gets home from work. (R. at 56.) He also testified that he plays "a lot of video games" during the day and at night tries to "work on school." (*Id.*) Plaintiff clarified that his mother or his sister stop by at least once a day to check on him, that his wife's family checks on him, and that his wife also checks on him to make sure he is "okay." (*Id.*) He stated that when he is alone with his children in the mornings, they watch cartoons. (R. at 57.)

Plaintiff testified that he has problems with missing his medications because his "memory's never been very good" following a "bad brain injury" when he was a child. (R. at 58.) He also confirmed that he has never worked with the Bureau of Vocational Rehab but he has worked "through Goodwills." (R. at 59.) Plaintiff further testified that his wife takes his children to their doctor's appointments. (*Id.*)

In response to questions from his counsel regarding his memory, Plaintiff described his issue as relating to "short-term" and explained that he had had to take a picture of where he had parked so he would be able to find his car after hearing. (R. at 61-62.) Plaintiff also testified that the last time he had been inpatient in a psychiatric ward was in 2015 or 2016 but that there have been other times when he should have gone but did not. (R. at 62-63.) He did not go these

other times because "it would just blow up and destroy [his] whole world." (R. at 63.) Instead, his family stepped in to help him. (*Id*.) During these episodes, his family comes over and lets him sleep. (*Id*.) They usually can tell from his behavior, including his discussion of a "grandiose plan" that he is headed for a "crash." (R. at 63-64.) During these periods, which can last for a couple of days or a week at the most, he can sleep for 18 hours. (R. at 64.) Plaintiff also explained that these episodes occur "every other week" or a "[f]ew times a month." (R. at 67.)

Plaintiff also testified that he is taking his online classes through Ohio Christian University, does his studying at night because he cannot sleep, and does his schoolwork when he gets "into [his] manic episodes." (R. at 64-65.) He explained that he can play video games for about 45 minutes before getting frustrated, can do basic things around the house like microwaving meals or making scrambled eggs, and does not easily get out of bed every day. (R. at 65.) Plaintiff stated that other than AA meetings, he may get out of the house two or three times a week and he visits with one friend. (*Id*.) Further, he confirmed that his wife does the grocery shopping unless he is grabbing chips or pop quickly for himself. (*Id*.) He stated that he understands that he has been diagnosed as manic-depressive, bipolar and that he also has problems with paranoia. (R. at 66-67.) His paranoia is "part of why" he does not go out. (R. at 67.)

### III. RELEVANT MEDICAL EVIDENCE

The record contains opinion evidence from State agency psychological consultants Melanie Bergsten, Ph.D., at the initial level (R. at 75-88) and Jennifer Swain, Psy.D., on reconsideration. (R. at 90-104.) Dr. Bergsten found that Plaintiff suffered from schizophrenia, depressive and bipolar related disorders, anxiety, obsessive-compulsive disorders, and substance

5

abuse/substance addiction disorders. (R. at 82-83.) In assessing Plaintiff's social interaction limitations, Dr. Bergsten concluded that Plaintiff was moderately limited in his ability to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. at 86.) In explaining in narrative form Plaintiff's social interaction capacities and/or limitations, Dr. Bergsten stated that Plaintiff "can interact superficially with supervisors, coworkers, and the general public." (*Id.*) Dr. Swain confirmed these conclusions on reconsideration. (R. at 96-97; 100-101.)

## IV. ADMINISTRATIVE DECISION

On February 11, 2019, the ALJ issued her decision. (R. at 13-27.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in any disqualifying substantial gainful activity since September 23, 2016, his application date. (R. at 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: unspecified mood

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

disorder; bipolar I disorder; unspecified schizophrenia spectrum and other psychotic disorder; unspecified trauma and stressor-related disorder; and alcohol use, cannabis use, amphetamine use disorders, in remission. (*Id.*) The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing simple, routine, repetitive tasks; is not able to perform at a production rate pace, defined as assembly line work, but can perform goal-oriented work, such as office cleaner positions; is limited to making simple work-related decisions; can have no more than occasional contact with supervisors, co-workers, and the general public; and is limited to tolerating few changes in a routine work setting, with any changes needing to be explained in advance.

(R. at 20.)

When assessing Plaintiff's mental RFC, the ALJ considered the opinion evidence in the record and gave "significant weight" to the opinions from the State agency psychological consultants. (R. at 22.) In doing so, the ALJ explained:

> As for the opinion evidence, the State agency psychological consultants' mental assessments are given significant weight because of their program familiarity, longitudinal view of the medical evidence of record, and their opinions are generally consistent with the evidence (Exhibits 1A and 3A). The evidence of record shows that the claimant's mental health symptoms have improved with treatment, which is consistent with no more than moderate mental limitations (See Exhibits 5F, pp. 15, 25, 29; 6F, pp. 16, 32, 42; and 8F, p. 13). However, some of State agency's limitations, such as their use of the term "superficial," has been phrased in clearer or more vocationally relevant terms herein. Therefore, the State agency mental assessments are given significant weight.

(*Id.*)

7

Relying on testimony from the VE, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, he can perform past relevant work as a Dishwasher. (R. at 23.) In making an alternative step five finding, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that Plaintiff is able to perform, including material loader, laundry worker and cleaner. (*Id.*) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

8

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

Plaintiff puts forth one assignment of error: the ALJ's decision should be reversed because the ALJ failed to properly account for all of the credited mental health limitations. (ECF No. 17, at 6.) Within this assignment of error, Plaintiff argues that the ALJ gave significant weight to the state agency psychologists' opinions but did not account for their limitation to only superficial interactions with others. (*Id*. at 7.) The Undersigned finds Plaintiff's argument to be well-taken.[2]

As an initial matter, the determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

---

[2] To the extent that Plaintiff is attempting to assert a separate issue relating to the vocational expert's testimony, this finding obviates the need for any in-depth analysis of such an issue. Thus, the Undersigned need not, and does not, resolve this alternative basis to the extent that Plaintiff may be asserting it supports reversal and remand. Nevertheless, to the extent Plaintiff may pursue it on remand, the ALJ may consider it if appropriate.

9

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted).

In this case, the ALJ assigned the state psychologists' opinions significant weight because of their program familiarity, longitudinal view of the medical evidence of record, and the opinions' general consistency with the evidence. Although the ALJ restricted Plaintiff to no more than occasional interaction with the general public, co-workers, and supervisors, the ALJ did not incorporate the state agency psychologists' opinions that Plaintiff was limited to only superficial interactions with supervisors, coworkers and the general public. (R. at 20.) The ALJ stated that "some of the State agency's limitations, such as their use of the term "superficial," has been phrased in clearer or more vocationally relevant terms…." (R. at 22.)

That explanation is inadequate. Courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to "superficial" interaction. *See*, *e.g., Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020), *report and recommendation adopted sub nom. Hutton v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (reversing and remanding where ALJ explanation was lacking because "superficial interaction" is a well-recognized, work-related limitation); *Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's

opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added)) (quoting *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)); *Barker v. Astrue*, No. 5:09-cv-1171, 2010 WL 2710520, at *5–6 (N.D. Ohio July 7, 2010) (finding that the ALJ erred in failing to include in plaintiff's "RFC the prior ALJ's findings, as adopted by the state agency physicians, that [p]laintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited [p]laintiff to no more than *occasional* interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent [p]laintiff can interact with co-workers and supervisors (whereas ALJ Hafer found that [p]laintiff was limited to superficial contact with such individuals)."). Stated simply, "superficial interaction" is a well-recognized, work-related limitation. The ALJ's contention that such a limitation, as reflected in the State agency consultants' opinions is "not stated in vocationally relevant terms" is therefore untenable. Because the ALJ's explanation is lacking in this regard, remand is necessary. *See Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v. Colvin*, No. 2:12-cv-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-cv-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or

11

duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction.").

To be sure, as The Commissioner argues and Plaintiff recognizes, an ALJ's decision to give weight to medical opinion evidence does not mean that the ALJ is required to incorporate every restriction proposed by that medical source. *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020) (citing *Salisbury v. Comm'r of Soc. Sec.*, No. 5:11-CV-2277, 2013 WL 427733, *7 (N.D. Ohio Feb. 1, 2013)). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Id.* (quoting *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)). Nevertheless, where, as is the case here, an RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *Id.* In this case, the apparent explanation— that superficial interactions is not a vocationally relevant term— is simply inaccurate. Although the ALJ was not required to adopt that restriction, he could not reject it on this basis. The Commissioner's arguments to the contrary are unavailing.

First, to the extent the Commissioner relies on *May v. Comm'r of Soc. Sec. Admin.,* No. 3:19-CV-00047, 2020 WL 103579 (S.D. Ohio Jan. 9, 2020), *report and recommendation adopted sub nom. May v. Comm'r of Soc. Sec.*, No. 3:19-CV-47, 2020 WL 1227208 (S.D. Ohio Mar. 13, 2020), the circumstances of that case are readily distinguishable. Significant to the Court in that case was that, although the ALJ explained that he did not use the term "superficial" because the DOT does not define it, "[h]e then went beyond finding Plaintiff limited to occasional contact with coworkers by including the more restrictive finding that Plaintiff could

not engage with the general public." *Id*. at *5. On this basis, the Court found "[i]t was then reasonable for the ALJ to take the combination of these limitations to constitute a 'sufficiently superficial' limitation." *Id*. As the Court explained, "[i]n this manner … [the ALJ] found Plaintiff more restricted than Drs. Zeune and Kirwin, who each thought Plaintiff had a "moderate" limitation in her ability to interact appropriately with the general public." *Id*. In short, the ALJ included a stricter limitation related to plaintiff May's social-interaction capacity. That is not the situation here. The ALJ did not go beyond the limitations noted by the State agency psychologists with respect to Plaintiff's social interaction limitations. Rather, he simply substituted the phrase "no more than occasional contact" for "interact superficially" without further addressing limitations in Plaintiff's ability to interact socially.

Further, the Commissioner's argument that the ALJ went beyond the limitations in the state reviewing psychologists' mental RFC findings in restricting Plaintiff to work involving only simple work-related decisions is of no consequence. This particular limitation relates to Plaintiff's sustained concentration and persistence capacities. *See, e.g.,* R. at 100. Not only was this not the situation persuasive to the Court in *May*, the Commissioner fails to connect this particular, unrelated limitation to Plaintiff's social interaction capacity. The same is true as to the Commissioner's argument that, looking at the ALJ's restriction more broadly, *i.e.*, within the context of the state psychologists' other findings, the RFC "constituted a sufficiently 'superficial' limitation for interacting with others." (ECF No. 24, at 8.) The Commissioner wholeheartedly fails to explain how, for example, the state agency psychologists' findings that Plaintiff was not significantly limited in his ability to work in coordination with or in proximity to others without being distracted by them; to ask simple questions or request assistance; or to

13

sustain ordinary routine without special supervision (*see id*.) supports the conclusion that the ALJ appropriately accounted for a superficial limitation.

The Commissioner also tacitly invites the Court to ignore the ALJ's stated reason and find that, in any event, the ALJ's decision to omit this restriction was supportable. But it is the ALJ, not the Court, who must determine what jobs can be performed by plaintiff in light of his or her limitations. *Hankinson,* 2020 WL 240812, at *3 (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009)). Any effort by this Court to use other information in the record to explain the ALJ's failure to include this restriction in plaintiff's RFC would constitute impermissible *post hoc* rationalization. *Id*. (citing *Kolasa v. Comm'r of Soc. Sec.*, No. 13-cv-14311, 2015 WL 1119953, at *10 (E.D. Mich. Mar. 11, 2015); *Miller v. Comm'r of Soc. Sec.*, No. 1:13-CV-1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014)(where the ALJ did not discuss her decision to omit a limitation from the RFC, court would engage in prohibited *post hoc* rationalization by relying on other evidence to explain the omission)).

In sum, the ALJ assigned significant weight to the State agency psychologists' opinions but failed to include a limitation for "superficial interactions" or offer an adequate explanation for declining to do so. The ALJ's cursory discussion "deprived this court of a 'logical bridge between the evidence on the record and his conclusion[.]'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). As a result, the ALJ's decision does not allow for an adequate review by this Court. For these reasons, it is **RECOMMENDED** that Plaintiff's contention of error be **SUSTAINED**.

## VII. CONCLUSION

Due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it

14

is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: June 1, 2021**               */s/ Elizabeth A. Preston Deavers*
                                     **ELIZABETH A. PRESTON DEAVERS
                                     UNITED STATES MAGISTRATE JUDGE**